IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| GXO LOGISTICS SUPPLY CHAIN, INC. )<br>(f/k/a XPO LOGISTICS SUPPLY CHAIN, )<br>INC. )<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>YOUNG LIVING ESSENTIAL OILS, LC )<br>)<br>      Defendant. ) | **JURY TRIAL DEMANDED**<br><br>Case No.  3:23CV61-SA-RP |

## COMPLAINT

COMES NOW Plaintiff GXO Logistics Supply Chain, Inc., f/k/a XPO Logistics Supply Chain, Inc. ("GXO" or "XPO"), and for its Complaint against Defendant Young Living Essential Oils, LC ("Defendant") states as follows:

## NATURE OF THE ACTION

1. GXO is a third-party logistics service provider ("3PL"), that, among other things, provides warehouse and logistics management services to its customers.

2. GXO and Defendant entered into contracts pursuant to which GXO provided warehouse management and other services to Defendant, including managing Defendant's inventory at a warehouse located in this judicial district.

3. Despite GXO providing the contracted-for services, Defendant attempted to improperly terminate the parties' contract and has failed to pay GXO's outstanding invoices for goods and services rendered at the warehouse, which currently total nearly $6 million with additional invoices to be issued.

4. Defendant's purported termination of the contracts is baseless. GXO did not meet the "Service Credit caps" that served as the grounds for Defendant's improper termination. To

the contrary, GXO continued to meet or exceed the required service levels and, for the short period when it did not, it was due to Defendant directing GXO to reduce labor and not a failure to perform by GXO.

5. Defendant's proffered ground for termination was a mere pretext. Defendant's termination was motivated, not by GXO's alleged performance issues, but rather by Defendant's goal of downsizing its warehouse footprint in the face of its own declining sales and corresponding shipping volumes.

6. GXO has been damaged by Defendant's wrongful attempted termination. In addition to payment of the unpaid invoices, GXO is entitled to, *inter alia*, payment of sums described in the parties' contracts. GXO's investigation of its damages is on-going, but GXO currently calculates its damages to be in excess of $29 million.

## PARTIES

7. GXO is a North Carolina corporation with its principal place of business at 4043 Piedmont Parkway, High Point, North Carolina 27265.

8. Defendant is a Utah limited liability corporation with its principal place of business at 1538 Sandalwood Drive, Lehi, Utah 84043. Based upon information and belief, none of the members of Defendant is a citizen of North Carolina for federal diversity jurisdiction purposes.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

10. This Court may exercise personal jurisdiction over Defendant because, among other reasons, Defendant entered into contracts and associated documents, as further described below, that were to be performed at a warehouse located in this judicial district in Horn Lake, DeSoto County, Mississippi. Performance of these contracts included GXO providing warehouse management and related services to Defendant at the Mississippi warehouse and Defendant shipping its inventory to the Mississippi warehouse, where it was stored and maintained. Defendant is, therefore, doing business in Mississippi and is otherwise subject to the exercise of personal jurisdiction by this Court.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events and omissions giving rise to GXO's claims occurred in this judicial district and a substantial part of the property that is the subject of this action is situated in this district.

## FACTUAL BACKGROUND

### The Contract Documents and Relevant Terms

12. GXO and Defendant entered into a Logistics Services Agreement (the "LSA") as of May 20, 2021 (the "Effective Date") for certain warehouse management and other services for a warehouse facility located at 6195 Highway 51, Horn Lake, Mississippi (the "Warehouse").

13. As Appendix A to the LSA, on the Effective Date of the LSA, the parties executed a Statement of Work ("SOW) further enumerating the parties' respective rights and duties. As Exhibit A to the LSA, on the Effective Date of the LSA, the parties executed a Service Level Agreement ("SLA") providing objectives and performance levels for operations at the Warehouse. Unless otherwise indicated, the term "LSA" refers herein collectively to all of the SOW, SLA, and the various other exhibits, schedules, and other attachments included therein. A true and accurate copy of the LSA will be filed under seal as Exhibit 1 hereto.

14. Pursuant to the LSA, GXO was to provide certain warehouse management and other services with respect to Defendant's inventory at the Warehouse.

15. In exchange for the services enumerated in the LSA, Defendant was obligated to pay GXO as provided for in the LSA.

16. The SLA set forth certain performance metrics GXO was to meet in operating the Warehouse. If GXO did not meet a performance metric, Defendant was entitled to a "Service Credit" of varying amounts depending upon the particular metric. Those credits were capped over the course of a three month period, referred to as a "Measurement Period", which began in April 2022. If the Service Credit cap was met for two consecutive Measurement Periods (i.e., quarters), Defendant could terminate the LSA.

17. Upon termination of the LSA, the parties were entitled to certain payments set forth in Section 12 of the SOW. In this case, GXO is entitled to the payments enumerated in Section 12(a) as it is the properly terminating party due to Defendant's misconduct described herein.

**Warehouse Operations and Defendant's Purported Termination**

18. After operations began at the Warehouse, issues arose as to Defendant's non-payment of GXO's invoices and GXO's satisfaction of certain performance metrics set forth in the SLA. It is expected in the logistics industry that there will be a learning curve with new operations such as at the Warehouse and that performance will improve with time. This proved to be the case with the Warehouse.

19. Specifically, Defendant failed to pay GXO's invoices from January through June 2022, alleging GXO had not met certain performance metrics set forth in the SLA.

20. On August 31, 2022, the parties entered into a Letter of Understanding (the "LOU"). A true and accurate copy of the LOU will be filed under seal as Exhibit 2 hereto.

21. The LOU resolved the parties' disputes as to invoices from January through June 2022. In resolving this dispute, GXO agreed to certain enumerated credits and Defendant agreed to pay the remaining, outstanding balances by August 31, 2022, the date of the LOU.

22. The LOU also resolved Defendant's complaints regarding GXO's alleged failure to meet the performance metrics set forth in the SLA. Specifically, Paragraph 3 of the LOU stated that Defendant:

> will release payment to GXO for all past due invoiced and disputed amounts by August 31, 2022 and will not dispute the May 2022 and June 2022 invoices. **Young Living waives the service failures through June 30, 2022**, but will not return any service failure money credited by GXO. Young Living does not waive its rights to terminate this SLA, the [LSA] and the SOW by sending a Termination to [GXO] should [GXO] meet the Service Credits [REDACTED] cap set forth in the Service Level Agreement paragraph 6(c) for two (2) consecutive Measurement Periods.

(Emphasis added).

23. Less than two months later, on October 26, 2022, Defendant sent a "Notification of Material Breach and Termination Notice" purporting to terminate the LSA ("Defendant's Notice" or "the Notice"). A true and accurate copy of Defendant's Notice will be filed under seal as Exhibit 3 hereto.

24. Remarkably, as grounds for GXO's alleged breach and Defendant's termination, Defendant's Notice pointed to the same alleged service failures Defendant had previously waived as key consideration for the August 31 LOU:

> During the two consecutive measurement periods of Q2 2022 (April 2022 – June 2022) and Q3 (July 2022 – September 2022), GXO reached the service credit cap of [REDACTED]. The Q2 2022 credit was issued against the April 2022 invoice and the Q3 2022 credit was issued against the July 2022 invoice, constituting an incurable Default under section 19 of the [LSA].

25. Defendant's purported termination was defective in multiple respects. First, Defendant improperly relied upon Paragraph 6(c) of the SLA to terminate. That provision requires GXO to have exceeded the Service Credit cap for two consecutive Measurement Periods. Defendant could not use the first quarterly Measurement Period of April 2022 to June 2022 ("Q2" as referenced in Defendant's Notice) because Defendant had explicitly waived any SLA violations for that time period in the LOU. Thus, even if there had been an alleged SLA violation for July 2022 to September 2022 (the "Q3" quarterly Measurement Period), GXO had only exceeded the Service Credit cap for one Measurement Period and not for two consecutive Measurement Periods as required for a material breach pursuant to Paragraph 6(c) of the SLA.

26. Moreover, Young Living was the direct cause of the Service Credit cap being reached in Quarter 3 of 2022 (July to August 2022). Young Living directed GXO to reduce its labor at the Warehouse so as to decrease Warehouse expenses. The reduction in labor inputs materially impacted GXO's ability to meet the metrics in the SLA.

27. Pursuant to Section 1.4 of Schedule 1 to the SOW, "material changes in account characteristics, operating assumptions, processes, parameters, or profiles may require an adjustment to the budget. The parties agree to negotiate in good faith an equitable adjustment to the associated budget elements and/or **service level requirements** impacted by the change." (Emphasis added). Young Living's reduction in labor at the Warehouse was a material change in the operating assumptions, process, and/or parameters that required a good faith, equitable adjustment to the SLA metrics. Young Living breached the parties' agreement by failing to engage in a good faith adjustment to the SLA metrics as a result of this material change. Given Defendant's breach of its obligation to negotiate in good faith, GXO cannot be held responsible for metrics that were set under different operating assumptions and inputs, i.e., reduced labor.

28. Defendant's Notice was further defective because it was untimely issued. Paragraph 6(c) of the SLA requires Defendant to exercise its termination rights "within thirty (30) days" of GXO exceeding the Service Credit cap. By Defendant's own admission, it failed to do so. Defendant's Notice states GXO exceeded the Service Credit cap in July 2022, but the Notice was not issued until October 26, 2022, thereby rendering the Notice untimely and ineffective.

29. Defendant's Notice, in which it attempted to terminate the LSA, constituted a breach of the LSA. Therefore, on November 2, 2022, GXO sent its response to Defendant's Notice in which it: (a) explained the deficiencies in Defendant's Notice; (b) provided its own notice to Defendant that Defendant's Notice constituted an anticipatory breach of, and default under, the LSA; and (c) gave Defendant 30 days to retract its Notice, thereby curing its default. A true and accurate copy of GXO's November 2, 2022 correspondence will be filed under seal as Exhibit 4 hereto.

30. Defendant did not withdraw its improper Notice. Instead, on November 10, 2022, Defendant sent correspondence reiterating its desire to terminate the LSA. A true and accurate copy of Defendant's November 10, 2022 correspondence will be filed under seal as Exhibit 5 hereto.

**GXO's Exceeds the Metrics, the Amendment, and Defendant's Pretextual Termination**

31. Defendant, however, took no action to effectuate the termination. To the contrary, Defendant and GXO entered into negotiations for an Amendment to the LSA (the "Amendment"). Defendant and GXO agreed to terms with GXO accepting Defendant's "final" revisions and the Amendment was finalized for execution on February 15, 2023. A true and

accurate copy of the acceptance of the Amendment and the approved Amendment will be filed under seal Exhibit 6 hereto.

32. In the period after Defendant's October 2022 notice, GXO's performance at the Warehouse was outstanding. GXO did not meet the Service Credit cap in either Quarter 4 2022 (October to November 2022) or Quarter 1 2023 (January to present 2023). Indeed, Service Credits of under $100 were issued for January and February 2023 <u>combined</u>.

33. Despite reaching terms on February 15, 2023, and GXO meeting or exceeding the SLA performance metrics, Defendant did not execute the Amendment. Instead, on February 28, 2023, Defendant sent a letter claiming to resurrect the now four-month old October 26, 2022, termination notice. A true and accurate copy of Defendant's February 28, 2023, correspondence (without attachments, which will be filed under seal) is attached hereto as Exhibit 7.

34. It is clear from Defendant's 2023 business performance that Defendant's purported February 28, 2023, termination was pretextual. Defendant had forecasted a year-over-year volume increase for January 2023. Instead, volume was down significantly year-over-year, which constituted a staggering decrease against the forecasted volumes. Defendant's February 28 termination notice was not motivated by the alleged reaching of Service Credit caps by GXO in early 2022, but rather Defendant's own precipitous decline in sales in early 2023. Terminating the LSA, however wrongfully, allows Defendant to consolidate its warehouse operations from three warehouses to two, and the wrongful termination is an attempt by Young Living to create a pretext to walk away from Young Living's promises to GXO.

35. At the time of Defendant's February 28, 2023, correspondence, as set forth above, GXO was, and had been, fully performing under the LSA and Defendant had no basis for termination.

**GXO's Termination of the LSA and Damages**

36. In response to Defendant's February 28 correspondence, in a March 1, 2023, letter, GXO reiterated its demand that Defendant revoke the supposed termination and cure its anticipatory breach. As of the date of this Complaint, Defendant has not done so and its refusal constitutes a breach of, and default under, the LSA. A true and accurate copy of GXO's March 1, 2023, correspondence is attached hereto as Exhibit 8.

37. Given Defendant's failure to cure its anticipatory breach, on March 10, 2023, GXO sent a notice terminating the LSA. A true and accurate copy of GXO's Termination Notice will be filed under seal as Exhibit 9 hereto.

38. GXO has been harmed by Defendant's breach of the LSA. Pursuant to the LSA, GXO is, at a minimum, entitled to: (a) payment of GXO's outstanding invoices for goods and services provided at the Warehouse as well as reimbursement of all amounts owed GXO incurred in operating and managing the Warehouse; (b) additional payments as described in Section 12(a) of the SOW; (c) prior invoice credits that were provided in good faith during the course of the parties' business relationships on the basis Defendant would execute the Amendment and/or otherwise continue the business relationship; and (d) charges for services provided, but that have not yet been invoiced. GXO continues to gather information regarding its damages, but the amounts due and owing to GXO from Young Living are in excess of $29 million.

39. GXO is additionally entitled to recover its expenses in prosecuting its claims including reasonable attorneys' fees, expenses and costs, and any expert fees, expenses and costs. *See* LSA, § 25.

## COUNT I – BREACH OF CONTRACT

40. GXO hereby incorporates by reference paragraphs 1 to 39 as if fully set forth herein.

41. The LSA is a valid and enforceable contract.

42. GXO fully performed under the LSA, including any and all conditions precedent to Defendant's performance.

43. Defendant breached the LSA by, *inter alia*, failing to pay GXO the amounts owed to it under the LSA, including for GXO's outstanding invoices, and for wrongfully and pretextually attempting to terminate the LSA in contravention of its terms as described above.

44. Defendant's breach of the LSA damaged GXO. GXO's damages are continuing, and will be proven at trial, but are no less than $29 million.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

45. GXO hereby incorporates by reference paragraphs 1 to 44 as if fully set forth herein.

46. Defendant falsely alleges GXO met the Service Credit caps in Quarters 2 and 3 of 2022. Defendant's allegation is untrue for the reasons set forth above.

47. In any event, however, Defendant's subsequent actions breached the implied covenant of good faith and fair dealing by its unjustified and unreasonable conduct.

48. Defendant took no action to effectuate its purported October 26, 2022, termination notice. To the contrary, it negotiated the Amendment and asked GXO to continue operations at the Warehouse and otherwise perform under the LSA. In the intervening "Measurement Periods", i.e., Quarter 4 2022 and Quarter 1 2023, GXO met or exceeded the SLA

metrics and did not reach the Service Credit cap that was Defendant's proffered basis for termination.

49. Defendant issued the termination notice due to its own business decline and improperly sought to use the prior Service Credit caps as a pretext to terminate the LSA.

50. In the LSA, it is implied that parties will timely act upon any termination and not terminate on pretextual grounds.

51. Defendant breached the implied covenant of good faith and fair dealing by purporting to terminate the LSA for pretextual reasons, by doing so after the parties had amicably addressed prior disputes in the LOU, agreed to the Amendment, and by its misconduct in belatedly claiming a false reason for termination.

52. GXO has been damaged by Defendant's breach of the implied covenant of good faith and fair dealing found in the LSA in the amounts described above.

## COUNT III – PROMISSORY ESTOPPEL

53. GXO hereby incorporates by reference paragraphs 1 to 52 as if fully set forth herein.

54. Defendant made a promise that, instead of effectuating a stale and ineffective termination, it would enter into the Amendment to the LSA, the terms of which the parties agreed to on February 15, 2023.

55. Defendant reasonably expected to induce action or forbearance by GXO, such as continuing operations at the Warehouse, not providing termination notices to Warehouse workers, and other actions.

56. GXO reasonably relied on Defendant's promise and took action to its detriment, including continuing operations at the Warehouse, not providing termination notices to Warehouse workers, and other actions.

57. Defendant's promise is binding because injustice can be avoided only by its enforcement.

58. GXO would be harmed, and an injustice result, if Defendant's promise is not enforced.

## COUNT IV – DECLARATORY JUDGMENT

59. GXO hereby incorporates by reference paragraphs 1 to 58 as if fully set forth herein.

60. GXO possess a statutory warehouseman's lien in Young Living's inventory at the Warehouse pursuant to Miss. Code § 75-7-209 and/or 6 Del. Code § 7-209.

61. A controversy exists between the parties as to their respective rights under the LSA, including GXO's statutory warehouseman's lien in Young Living's inventory at the Warehouse.

62. The resolution of this controversy is vital to the controversy between the parties.

63. The controversy is susceptible to, and is ripe for, authoritative resolution.

64. GXO is entitled to a declaratory judgment stating that it possesses a valid and enforceable statutory warehouseman's lien in Young Living's inventory at the Warehouse and may execute upon that lien in accordance with applicable law.

## PRAYER FOR RELIEF

WHEREFORE, GXO prays for judgment against Defendant as follows:

1. Judgement in GXO's favor and against Defendant;

2.	An award of compensatory damages in an amount to be proven at trial, plus applicable pre-judgment and post-judgment interest thereon;

3.	A declaration that GXO possesses a valid and enforceable statutory warehouseman's lien in Young Living's inventory at the Warehouse and may execute upon that lien in accordance with applicable law;

4.	An award of fees, costs, and reasonable attorneys' fees incurred by GXO pursuant to Section 25 of the LSA; and

5.	For any such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

GXO hereby demands a trial by jury for all issues so triable.

This, the 10th day of March, 2023.

        Respectfully Submitted,

        s/ Locke Houston Waldrop
        Locke Houston Waldrop (MSB No. 104951)
        BAKER, DONELSON, BEARMAN,
          CALDWELL & BERKOWITZ, P.C.
        165 Madison Avenue, Suite 2000
        Memphis, Tennessee 38103
        Telephone: 901.577.2385
        Facsimile: 901.577.4268
        Email: lwaldrop@bakerdonelson.com

        and

- 14 -

Lawrence C. Friedman (*pro hac vice forthcoming*)
Mark A. Mattingly (*pro hac vice forthcoming*)
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: 314.552.6039
Facsimile: 314.552.7000
Email: lfriedman@thompsoncoburn.com
Email: mmattingly@thompsoncoburn.com

*Counsel for Plaintiff GXO Logistics Supply Chain, Inc. (f/k/a XPO Logistics Supply Chain, Inc.)*