IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

GXO LOGISTICS SUPPLY CHAIN, INC.
 f/k/a XPO LOGISTICS SUPPLY CHAIN, INC.                                                        PLAINTIFF

v.                                                                       CIVIL ACTION NO. 3:23-CV-61-SA-RP

YOUNG LIVING ESSENTIAL OILS, INC.                                                              DEFENDANT

ORDER AND MEMORANDUM OPINION

On March 10, 2023, GXO initiated this civil action by filing its Complaint [1] against Young Living. On April 7, 2023, Young Living timely filed its Answer [15], wherein it, in addition to responding to GXO's allegations, asserted four counterclaims against GXO. Thereafter, GXO filed a Motion to Dismiss [32], requesting that the Court dismiss one of the four counterclaims. That Motion [32] has been fully briefed and is now ripe for review.

*Relevant Background*

In May 2021, GXO and Young Living entered into a warehousing and shipping contractual arrangement, pursuant to which GXO stored and shipped Young Living's products. The parties' relationship deteriorated quickly.

As a general background, Young Living is engaged in the business of producing, selling, and distributing essential oils, cosmetics, and nutritional supplements. Part of its business model involves engaging warehousing and shipping vendors, such as GXO. In May 2021, GXO and Young Living entered into a series of contracts: Logistics and Service Agreement ("LSA"); Statement of Work ("SOW"); and Service Level Agreement ("SLA") (collectively "the Agreements"). Generally speaking, under the Agreements, GXO performed certain services for Young Living, such as storing Young Living's products at a warehouse located in Horn Lake, Mississippi as well as shipping the products for Young Living.

Although the parties dispute the underlying reasons, it is not in dispute that their relationship fell apart. GXO contends that Young Living failed to pay invoices due and owing to GXO for the time period of January 2022 through June 2022. On the other hand, Young Living takes the position that GXO had not met certain performance metrics, justifying the non-payment of the invoices.

On August 31, 2022, recognizing their respective dissatisfaction, the parties entered into a Letter of Understanding, which resolved their dispute as to the prior invoices and provided certain parameters moving forward. Shortly thereafter, on October 26, 2022, Young Living sent GXO a letter with the following subject line: "notification of material breach and termination notice." [1], Ex. 3 at p. 2. The letter identified the ways in which Young Living believed that GXO had breached the contract and requested a meeting to discuss the logistics of ending the parties' relationship.

GXO responded with its own letter to Young Living dated November 2, 2022. In its letter, GXO set forth the ways in which it believed Young Living's notification was defective. Ultimately, the letter concluded:

> In conclusion, consider this GXO's 30-day Notice of Young Living's Default. You must retract the Letter and allegations within such period or GXO will assume that Young Living is proceeding with an anticipatory breach of the Agreement, and GXO will proceed accordingly to protect its interests.

[1], Ex. 4 at p. 4.

Young Living did not retract its letter and allegations regarding GXO's purported default. This lawsuit followed.

In its Complaint [1], GXO asserts claims against Young Living for breach of contract (Count One), breach of the implied covenant of good faith and fair dealing (Count Two),

promissory estoppel (Count Three), and declaratory judgment (Count Four).[1] Young Living responded to the Complaint [1] by filing an Answer and Counterclaim [15]. In its Counter-Complaint [15], Young Living asserts four claims against GXO: breach of contract (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), civil conversion (Count Three), and declaratory judgment (Count Four).[2]

*Applicable Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937.

Ultimately, the Court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff 's likelihood of success." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)), cert. denied, 133 S. Ct. 192, 184 L. Ed. 2d 38 (2012). Therefore, the Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). Still, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. 1937.

---

[1] Regarding the request for a declaratory judgment, GXO seeks a declaration that it possesses a statutory warehouseman's lien on Young Living's inventory at the Horn Lake warehouse.
[2] Young Living's request for declaratory judgment seeks a declaration that GXO's assertion of a statutory warehouseman's lien is invalid.

*Analysis and Discussion*

Although the parties' dispute involves multiple underlying agreements and claims, the issue presently before the Court is a narrow one. In particular, GXO seeks dismissal of one of Young Living's counterclaims—specifically, Young Living's counterclaim for breach of the implied covenant of good faith and fair dealing (Count Two).

Prior to addressing the merits of the parties' arguments, the Court notes that the LSA contains a choice of law provision, which specifically provides that "this Agreement shall be governed by and construed in accordance with the applicable laws of the State of Delaware, without regard to conflicts-of-laws principles." [1], Ex. 1 at p. 13. Neither party contests the applicability of Delaware law. The Court agrees that Delaware law is applicable and will therefore apply it in resolving this matter.

Turning to the merits, GXO's argument, stated simply, is that Young Living's counterclaim for breach of the implied covenant of good faith and fair dealing is duplicative of the breach of contract counterclaim and therefore must be dismissed. Young Living disagrees.

The Court begins with Young Living's allegations in its Counter-Complaint [15] on the breach of contract and implied covenant of good faith and fair dealing. Those allegations are as follows:

## COUNT 1

### (BREACH OF CONTRACT)

> . . .
>
> 37. The Agreements are binding contracts between Young Living and GXO.
>
> 38. Young Living performed each of its material obligations under the Agreements.

4

39. GXO breached and defaulted under the Agreements in multiple material respects, including: (i) exceeding the [Service Credit] cap in multiple, consecutive quarters; (ii) failing to provide its services with the same degree of accuracy, completeness, efficiency, quality, and timeliness as are provided by well-managed suppliers; (iii) not providing invoices to Young Living based upon the provisions [in] the Agreements; (iv) refusing to cooperate fully with Young Living's removal of its products from GXO's warehouse to another warehouse; and (v) purporting to terminate the Agreement without providing the notice and cure period demanded by the Agreements.

40. As a result of GXO's breaches of the Agreements, Young Living has suffered monetary damages, including: (i) reimbursement of the Operations Initiation Fee Credit in the amount of $14.4 million; (ii) outstanding Service Credits owed by GXO; (iii) amounts owed by GXO under the Letter of Understanding; and (iv) the value of Young Living's product (expired and unexpired) in GXO's warehouses.

## COUNT 2

## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

. . .

42. GXO, based on the parties' reasonable expectations, had the specific implied contractual obligations (i) to cooperate in good faith in Young Living's efforts to remove its products from GXO's warehouses; (ii) to provide reasonable efforts in performing shipping, warehousing, and fulfillment services for Young Living; and (iii) to properly invoice Young Living for GXO's services.

43. GXO breached those implied contractual obligation[s] by: (i) refusing to negotiate the return of Young Living's products from GXO's warehouses; (ii) repeatedly failing to timely ship Young Living's products; and (iii) consistently overcharging Young Living for its services.

44. As a result of GXO's breaches of the Agreements, Young Living has suffered monetary damages, including: (i) the value of Young Living's product (expired and unexpired) in GXO's warehouses, (ii) Young Living's harm from GXO's

>>delayed services; and (iii) the excess amounts that GXO charged Young Living.

[15] at p. 16-18.

GXO takes the position that the implied duties alleged in Count Two "are covered by express provisions of the Agreements . . . A cause of action for breach of the implied covenant of good faith and fair dealing can only be asserted to cover alleged 'gaps' in a contract and cannot be used to supplant or otherwise supplement express terms." [33] at p. 2.

"Under Delaware law, the implied covenant of good faith and faith dealing attaches to every contract by operation of law and 'requires "a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits" of the bargain.'" *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015) (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005); *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985)). "The implied covenant of good faith and fair dealing is the doctrine by which Delaware law cautiously supplies terms to fill gaps in the express provisions of a specific agreement." *Allen v. El Paso Pipeline GP Co., LLC*, 113 A.3d 167, 182 (Del. Ch. 2014). The covenant "involves a 'cautious enterprise,' inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) (quoting *Dunlap*, 878 A.2d at 441). "Because the implied covenant is, by definition, implied, and because it protects the spirit of the agreement rather than the form, it cannot be invoked where the contract itself expressly covers the subject at issue." *Allen*, 113 A.3d at 183 (quoting *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *10 (Del. Ch. May 7, 2008)).

As quoted above, Paragraph 43 of Young Living's Counter-Complaint [15] lists three separate ways in which it contends that GXO breached the implied covenant: "(i) refusing to

negotiate the return of Young Living's products from GXO's warehouses; (ii) repeatedly failing to timely ship Young Living's products; and (iii) consistently overcharging Young Living for its services." [15] at p. 18.

As to GXO's alleged refusal to negotiate the return of Young Living's products, Young Living contends that since the termination of the parties' relationship, "GXO still has not returned Young Living's products[.]" [36] at p. 8. On this point, Young Living concedes that the parties' Agreements contemplate that the parties "work together in good faith on a termination plan," which "shall provide for the packing and preparation for shipment of all of [Young Living's] Commodities" to a location "as instructed by" Young Living. [1], Ex. 1 at p. 34. But Young Living takes the position that "GXO still has not returned Young Living's products, so GXO apparently believes the parties' Agreements include no [return] obligation. If GXO's reading somehow proves correct, Young Living should be free to demonstrate that the implied covenant required GXO to return the products after the contractual relationship ended." [36] at p. 8.

Young Living makes similar contentions of "gaps" as to its other two theories supporting an alleged breach of the implied covenant of good faith and fair dealing:

> Young Living's implied covenant counterclaim next alleges that GXO failed to timely ship Young Living's products. There is no dispute that the parties agreed to certain "performance standards that" GXO was "required to meet in providing the Service." But again, GXO continues to assert that Young Living's termination of the Agreements was "pretextual." If GXO continues disputing that it breached its contractual obligations, Young Living may demonstrate that GXO "frustrated the fruits of the bargain that the asserting party reasonably expected." *Dieckman*, 115 A.3d at 367.

> Young Living finally asserts that GXO breached the implied covenant by consistently overcharging for its services. Once again, the parties' Agreements contemplated that GXO would charge agreed-upon prices for its services. But, over the course of the parties' relationship, GXO repeatedly overcharged Young Living to the tune of nearly $4.9 million in a single year. And "knowingly

7

> overbilling" is "precisely the kind of conduct the implied covenant of good faith and fair dealing is designed to protect against." *Simplot Ab Retail Sub, Inc. v. N. Liberty Land, LLC*, 2020 WL 6293579, at *12 (N.D. Iowa Oct. 27, 2020).

[36] at p. 7-8 (some citations omitted).

The Court is cognizant of GXO's position but nonetheless finds that Young Living has set forth plausible theories as to the way in which the implied covenant of good faith and fair dealing could come into play. While the parties' Agreements certainly contemplated various, if not most, aspects of their relationship and the subsequent termination thereof, the Court cannot definitively hold that the "gaps" Young Living has identified will not become relevant. Consequently, the breach of the implied covenant of good faith and fair dealing *may* in fact be applicable. In reaching this conclusion, this Court is aware that some of the contentions in Count Two may very well ultimately overlap with the express contract terms. If that proves to be the case, the Court will entertain subsequent motion(s) on this point.

Nonetheless, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Stewart v. Allstate Prop. and Cas. Ins. Co.*, 2023 WL 2616100, at *1 (N.D. Miss. Mar. 23, 2023) (quoting *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009)). The Court finds that it would be inappropriate to dismiss the subject counterclaim at this early juncture of the litigation.

*Conclusion*

For the reasons set forth above, the Court declines to dismiss Count Two of Young Living's Counter-Complaint [15]. GXO's Motion to Dismiss [32] is DENIED.

SO ORDERED, this the 29th day of November, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE