UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**GXO LOGISTICS SUPPLY CHAIN, INC.** **PLAINTIFF**

V. **CIVIL ACTION NO. 3:23-CV-61-SA-RP**

**YOUNG LIVING ESSENTIAL OILS, LC** **DEFENDANT**

### ORDER ON MOTION FOR PROTECTIVE ORDER AND TO COMPEL DESTRUCTION OF PRIVILEGED MATERIAL

This matter is before the court on the plaintiff/counter-defendant GXO Logistics Supply Chain, Inc.'s Motion for Protective Order and to Compel Destruction of Privileged Material. ECF #179. The defendant/counter-claimant Young Living Essential Oils, LC opposes the motion. As discussed below, the court finds the motion should be granted in part and denied in part.

In this action, GXO and Young Living have brought various claims against one another seeking the recovery of damages and other relief related to the breakdown of the business relationship between the two companies. A dispute has arisen over whether 16 of the more than 29,500 documents previously produced by GXO during discovery contain privileged information. Pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), GXO notified Young Living of the claim of privilege as to those documents, Young Living sequestered the subject documents pending resolution of GXO's claim of privilege, and GXO provided unredacted copies of the subject documents to the undersigned for *in camera* review. As to the threshold issue of whether Young Living may review the sequestered documents in opposing GXO's claim of privilege, the court ruled that Young Living may not do so. ECF #177. GXO then filed the present motion asking the court to enforce its claw back request.

The issues to be resolved are (a) whether, as GXO asserts, the subject documents contain

communications protected by the attorney-client privilege, and if so, (b) whether, as Young Living asserts, GXO waived the privilege by producing the documents to Young Living in discovery. The court will discuss each issue in turn.

### A. Whether the documents contain privileged communications

In its brief, GXO asserts that its claim of attorney-client privilege is governed by Delaware law, and although Young Living does not expressly agree with this assertion, Young Living does not dispute it either. Delaware Rule of Evidence 502(b) provides, in relevant part, as follows:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, … [or] (4) between representatives of the client or between the client and a representative of the client.

Under this rule, "a communication can qualify for the attorney-client privilege even if no party to the communication is an attorney." *MPEG LA, L.L.C. v. Dell Global B.V.,* No. 7016-VCP, 2013 WL 6628782, at *1 (Del. Ch. Dec. 9, 2013). For instance, a privileged communication will not lose its protection "if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation." *In re Lululemon Athletica Inc. 220 Litigation,* No. 9039-VCP, 2015 WL 1957196, at *9 (Del. Ch. Apr. 30, 2015) (quoting *Rembrandt Technologies, L.P. v. Harris Corporation,* No. 07C-09-059-JRS, 2009 WL 402332, at *8 (Del. Feb. 12, 2009)). Communications between a company's non-attorney employees are privileged "to the extent that they specifically convey or substantially describe" privileged communications between the company's attorneys and non-attorney employees. *RCA Corporation v. Data General Corporation,* No. 84-270-JJF, 1986 WL 15692, at *5 (D. Del. July 2, 1986). "The burden of proving that the privilege applies to a particular communication is on the party

asserting the privilege." *Moyer v. Moyer,* 602 A.2d 68, 72 (Del. 1992).

In its present motion, GXO claims attorney-client privilege as to 9 email communications or portions thereof, some of which appear on multiple documents previously produced by GXO during discovery. GXO identifies the 9 purportedly privileged communications as "Privileged Communication No. 1," "Privileged Communication No. 2," et cetera, and GXO provides a description of each communication along with the bates number of each document on which it appears. GXO's description of each communication includes the date, the author, the recipient(s), and a description of the nature of the message, which descriptions, after having reviewed the unredacted documents submitted for *in camera* review, the court finds to be accurate and sees no need to recite here. However, although the court agrees with GXO's claim of privilege as to most of the subject communications, the court disagrees with GXO's claim as to "Privileged Communication No. 2." As to each communication, the court finds as follows:

Privileged Communication No. 1 is privileged. A GXO executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation.

Privileged Communication No. 2 is not privileged. A GXO executive relays to another the terms of a decision based, in part, on legal advice. Although the legal advice -- which is not contained in the communication -- is privileged, the resulting decision is not. *See Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 204 (E.D.N.Y. 1998) (finding assertion that decision was based in part on legal advice was not sufficient and stating, "It is not the decision itself that is privileged but the confidential communications to and from the attorney and client that resulted in that decision.") (citing *United States v. Freeman,* 619 F.2d 1112, 1119-1120 (5th Cir. 1980)).

Privileged Communication No. 3 is privileged. A GXO executive substantially describes to another a privileged communication with an attorney.

Privileged Communication No. 4 is privileged.  A GXO executive substantially describes to another a privileged communication to be had with an attorney.

Privileged Communication No. 5 is privileged.  A GXO executive describes to others the subject matter of legal advice obtained or to be obtained from an attorney and to be relayed to the author.

Privileged Communication No. 6 is privileged.  A GXO executive describes to others the subject matter of attached legal advice.

Privileged Communication No. 7 is privileged.  A GXO executive substantially describes to others a privileged communication with an attorney.

Privileged Communication No. 8 is privileged.  A GXO executive memorializes legal advice in an email to herself.

Privileged Communication No. 9 is privileged.  A GXO executive substantially describes to another a privileged communication to be had with an attorney.

Having found that all but one of the subject communications are privileged, the court now turns to whether GXO waived the privilege by producing the communications to Young Living in discovery.

B.  **Whether GXO waived its attorney-client privilege**

"Generally, a party waives attorney-client privilege when it voluntarily discloses privileged communications to a third party, including an adversary in litigation."  *YETI Coolers, LLC v. RTIC Coolers, LLC,* No. A-15-CV-597-RP, 2016 WL 8677303, at *2 (W.D. Tex. Dec. 30, 2016).  However, there are limitations on the waiver of attorney-client privilege in federal proceedings, which limitations are set forth in Federal Rule of Evidence 502, which "applies even if state law provides the rule of decision."  FED. R. EVID. 502(f).  For instance, Rule 502(b)

provides that a disclosure made in a federal proceeding does not operate as a waiver if (1) the disclosure is inadvertent, (2) the holder of the privilege took reasonable steps to prevent disclosure, and (3) the holder promptly took reasonable steps to rectify the error. Additionally, Rule 502(d) provides, "A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court …" In the case management order (CMO) entered in the present case and established with the participation of both parties, the court ordered, "Pursuant to FED.R.EVID. 502(d), the attorney-client privilege and the work-product protections are not waived by any disclosure connected within this litigation pending before this Court." ECF #40 at 3.

GXO argues that pursuant to the CMO's non-waiver provision, which protects against waiver resulting from *any* disclosure made in connection with this litigation, GXO's production of the subject communications to Young Living during discovery did not operate as a waiver. Young Living, on the other hand, argues that the CMO's non-waiver provision applies only to *inadvertent* disclosures. The parties also dispute whether GXO's disclosures were inadvertent and whether the other criteria for non-waiver set forth in Rule 502(b) are met. However, because the court agrees with GXO's interpretation of the plain, unambiguous language of the CMO's non-waiver provision, the court need not resolve whether GXO's disclosures were inadvertent or whether the other Rule 502(b) criteria are met.

Young Living urges the court to follow the ruling in *U.S. Home Corporation v. Settlers Crossing, LLC,* in which the district court stated that "if a court order or agreement does not provide adequate detail regarding what constitutes inadvertence, what precautionary measures are required, and what the producing party's post-production responsibilities are to escape waiver, the court will default to Rule 502(b) to fill in the gaps in controlling law." No. DKC 08-

1863, 2012 WL 3025111, at *5 (D. Md. July 23, 2012). In that case, the subject confidentiality order contained a non-waiver provision for privileged or protected materials that are inadvertently disclosed by the producing party, as well as a claw back provision whereby the receiving party must return any document that the producing party deems inadvertently disclosed. However, the order was silent as to what constitutes inadvertence and as to the parties' precautionary or post-production responsibilities to avoid waiver. *Id.* at *6. As such, the court defaulted to Rule 502(b) and found that the disputed disclosure was unprotected against waiver because the rule's second prong requiring reasonable steps to prevent disclosure was not met. *Id*. at *9.

In the present case, because the CMO's non-waiver provision does not specify what constitutes inadvertence or what precautionary and post-production measures are required, Young Living urges the court to follow *Settlers Crossing* and conduct a 502(b) analysis to determine whether the subject disclosures by GXO are protected against waiver. However, there is a glaring distinction between *Settlers Crossing* and this case.

Whereas the *Settlers Crossing* non-waiver provision by its terms applied to *inadvertent* disclosures, the CMO's non-waiver provision in this case applies to *any* disclosures. Rule 502(b), which the *Settlers Crossing* court applied to fill in the gaps of the non-waiver provision at issue in that case, applies to inadvertent disclosures only. Rule 502(b)'s heading itself reads, "Inadvertent Disclosure." That rule's provisions have no bearing on and should not be used to supplement the non-waiver provision in this case. Young Living's reliance on *Settlers Crossing* is misplaced.

Young Living also points to the decision in *Hostetler v. Dillard*, in which the U.S. District Court for the Southern District of Mississippi, faced with a dispute over certain

*intentional* disclosures, reasoned that although Rule 502(d) is not expressly limited to unintentional disclosures, "the purpose and intent of Rule 502 is to protect litigants from inadvertent disclosures." No. 3:13-cv-351-DCB-MTP, 2014 WL 6871262, *4 (S.D. Miss. Dec. 3, 2014). As such, the court held that neither Rule 502(d) nor the CMO's non-waiver provision – which was identical to the one in this case – protected the subject intentional disclosures against waiver. However, *Hostetler* is readily distinguishable from this case as well.

Whereas the disclosures at issue in this case involve communications between and among GXO executives and GXO's attorneys, the disclosures at issue in *Hostetler* involved certain defendants' communications with a third party outside the attorney-client relationship, which communications were later disclosed by that third party and one of the defendants during their depositions in the case. *Id.* at *2-3. *Hostetler* is hardly on point in this case, and even if *Hostetler* can be interpreted to hold that Rule 502(d) and the subject CMO's non-waiver provision apply only to *inadvertent* disclosures and not to *any* disclosures as the non-waiver provision clearly states, this court disagrees.

While it appears neither this court nor any court whose decisions are binding on this court has specifically addressed whether Rule 502(d) allows a party to claw back privileged materials without regard to whether the disclosure was inadvertent, this court is persuaded by the decisions of courts that have answered this question in the affirmative. *See, e.g., Thomas v. Marshall Public Schools*, 690 F.Supp.3d 941, 962 (D. Minn. 2023) (stating "Rule 502(d) allows a party who discloses privileged material to claw them back without having to prove the disclosure was 'inadvertent'"); *United States v. Hall*, No. 3:18-CR-623-S, 2020 WL 7027473, at *3 (N.D. Tex. Nov. 30, 2020) (finding Rule 502(d) applicable to privileged materials disclosed "inadvertently or purposefully"); *United States v. Caroleo*, No. 17-cr-177 (ENV), 2019 WL 5869690, at *1

(E.D.N.Y. Nov. 11, 2019) ("Even if the disclosure is not 'inadvertent' under Rule 502(b), however, a court may nevertheless 'order that [the] privilege or protection is not waived by disclosure connected with the litigation pending before the court.'") (quoting FED. R. EVID. 502(d)); *Brookfield Asset Management, Inc v. AIG Financial Products Corp.*, No. 09 Civ. 8285(PGG)(FM), 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (holding that under stipulated Rule 502(d) order that no waiver of any applicable privilege would result from defendants' production "of any documents in this proceeding," defendants had right to claw back privileged documents "no matter what the circumstances giving rise to their production were"). *See also* The Sedona Conference, *The Sedona Conference Commentary on Protection of Privileged ESI*, 17 SEDONA CONF. J. 95, 104 (2016) (stating that under Rule 502(d), "federal courts may enter orders, such as non-waiver provisions in protective orders and confidentiality orders, that will avoid any questions about whether the waiver was inadvertent or whether the holder of the privilege took reasonable steps …").

  Neither Rule 502(d) itself nor the CMO's non-waiver provision in this case references any limitation of its application to inadvertent disclosures. To the contrary, the CMO's non-waiver provision expressly applies to *any* disclosures, and the court will not now impose an *ex post facto* limitation to inadvertent disclosures. "[W]hen a court's order is clear and unambiguous, neither a party nor a reviewing court can disregard its plain language 'simply as a matter of guesswork or in an effort to suit interpretive convenience.'" *Negron-Almeda v. Santiago*, 528 F.3d 15, *23 (1st Cir. 2008) (quoting *Alstom Caribe, Inc. v. Geo P Reintjes Co.*, 484 F.3d 106, 115 (1st Cir. 2007)). GXO's subject disclosures to Young Living – inadvertent or not -- were made in connection with this litigation and therefore did waive GXO's attorney-client privilege.

## Conclusion

For the reasons discussed herein, GXO's Motion for Protective Order and to Compel Destruction of Privileged Material is GRANTED IN PART AND DENIED IN PART as follows:

1. GXO's motion as to Privileged Communications Nos. 1 and 3 through 9 is GRANTED;

2. GXO's motion as to Privileged Communication No. 2 is DENIED;

3. Young Living is ORDERED to destroy -- without reviewing -- all of the documents that are the subject of GXO's claw back request and motion;

4. GXO is ORDERED to provide Young Living with an unredacted copy of the two documents (bates stamped GXO_0061752 and GXO_0063140) containing Privileged Communication No. 2; and

5. No later than 14 days after the entry of this order, each party must file a notice of its compliance with this order.

**SO ORDERED**, this, the 3rd day of December, 2024.

/s/ Roy Percy_____
UNITED STATES MAGISTRATE JUDGE